IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

MARCUS TELESFORD,

                        Plaintiff,                    Civil Action No.
                                                      9:14-CV-1209 (GTS/DEP)

        v.

TAMER, *et al.*,

                        Defendants.

───────────────────────────────

APPEARANCES:                                         OF COUNSEL:

FOR PLAINTIFF:

MARCUS TELESFORD, *Pro Se*
02-A-0506
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN                            MARK G. MITCHELL, ESQ.
New York State Attorney General                      Assistant Attorney General
The Capitol
Albany, New York 12224


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Marcus Telesford, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), has brought this action pursuant to 42 U.S.C. § 1983 alleging that six DOCCS employees violated his Eighth Amendment rights in connection with a use-of-force incident that occurred at the Clinton Correctional Facility ("Clinton") on May 31, 2014. Following the close of discovery, defendants filed a motion for summary judgment seeking dismissal of plaintiff's complaint. For the reasons set forth below, I recommend defendants' motion be granted in part but otherwise denied.

I.      <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS at the Upstate Correctional Facility located in Malone, New York. Dkt. No. 50. At all times relevant to his complaint, however, he was housed in Clinton, which is located in Dannemora, New York. *See generally* Dkt. No. 1.

According to plaintiff, corrections officers appeared at his special housing unit ("SHU") cell to search it sometime after breakfast on

---

[1]      In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Saturday, May 31, 2014. Dkt. No. 64-2 at 50, 56. Plaintiff, who at the time was diagnosed with antisocial personality disorder, became immediately suspicious of the search and did not want to exit his cell. *Id.* at 50. When defendant Thomas Tamer, a corrections sergeant, arrived at plaintiff's cell for the purpose of overseeing an involuntary extraction of Telesford from his cell, he advised plaintiff that corrections staff was going to conduct the search and then return him to the cell. *Id.*; Dkt. No. 64-7 at 1-2. Plaintiff then agreed to exit his cell, provided that he would be allowed to speak with a mental health provider. Dkt. No. 64-2 at 50-51; Dkt. No. 64-7 at 2.

Defendant Traci Nycz, a nurse employed by the New York State Office of Mental Health and stationed at the satellite unit of the Central New York Psychiatric Center located at Clinton ("mental health unit"), met plaintiff once he exited his cell and asked to speak with him upstairs in the mental health unit. Dkt. No. 64-2 at 51. Plaintiff complied and was escorted to the unit which is located on the third floor of Clinton. *Id.* Upon meeting with defendant Nycz in the mental health unit, plaintiff told her that he was paranoid about the officers arriving at his SHU cell to search it, but that there was "nothing wrong with [him]" and he was neither suicidal nor homicidal. *Id.* Defendant Nycz thereafter informed plaintiff that she was

admitting him to an observation cell within the mental health unit.[2] [Dkt. No. 64-2 at 51-52](#); [Dkt. No. 64-5 at 2-3](#). Upon learning of that decision, plaintiff became upset. [Dkt. No. 64-2 at 51-52](#). Plaintiff alleges that defendant Nycz had no reason to admit him to an observation cell and that she lied and falsified his mental health records to facilitate an assault that, plaintiff contends, occurred immediately after she determined he should be admitted. [Dkt. No. 1 at 2](#).

Following defendant Nycz's decision to place plaintiff into an observation cell, he was escorted by corrections officers to the strip frisk area of the mental health unit. [Dkt. No. 1 at 3](#); [Dkt. No. 64-2 at 52](#). Defendant Tamer and defendant Christopher Trudeau, a corrections officer, then instructed plaintiff to remove his clothing. *Id.* During an ensuing strip frisk, defendants discovered a pen that plaintiff had hidden between his buttocks. *Id.* According to plaintiff, upon finding the pen, defendants Tamer and Trudeau, as well as defendants Kendrick Baker, Randy Brown, and Kevin Hart, all of whom are corrections officers and stationed within the mental health unit, assaulted him by first sweeping his legs out from under him, causing him to hit his head on the ground, and

---

[2]    Inmates are transferred to observation cells when they are determined to be "psychiatrically unstable, unpredictable and/or a danger to themselves or others." [Dkt. No. 64-6 at 1](#).

then punching and kicking him for a "brief" period of time that lasted no longer than five minutes. *Id.* Plaintiff alleges that at some point during the assault, defendant Tamer sat on top of him, yelled at him using derogatory terms, and stuck his finder inside plaintiff's anus. Dkt. No. 1 at 3-4; Dkt. No. 64-2 at 52-53. Following the incident, according to Telesford, defendants Tamer, Trudeau, Baker, Brown, and Hart carried him to a cell, tossing him inside and underneath a bed. Dkt. No. 1 at 4; Dkt. No. 64-2 at 53. As plaintiff was crawling out from beneath the bed, defendant Tamer struck him on the head with a baton. *Id.*

Defendants contend that the assault alleged by plaintiff did not occur. *See, e.g.,* Dkt. No. 65-7 at 3. Additionally, while defendants Tamer and Trudeau admit that they were present for the strip frisk in the mental health unit, Dkt. No. 64-7 at 2-3; Dkt. No. 64-10 at 2, defendants Baker, Brown, and Hart deny that they were present for the incident. Dkt. No. 64-13 at 2; Dkt. No. 64-14 at 2; Dkt. No. 64-15 at 2. There is evidence in the record, however, reflecting that defendants Baker, Brown, and Hart were on duty in the mental health unit on the date of the incident. Dkt. No. 64-13 at 1; Dkt. No. 64-14 at 1; Dkt. No. 64-15 at 1.

According to plaintiff, he did not receive any medical attention for the injuries he sustained during the assault until Monday, June 2, 2014. Dkt.

No. 1 at 4; Dkt. No. 64-2 at 53. On that date, he reported the assault to a nurse in the mental health unit and was subsequently transferred to Champlain Valley Physicians Hospital located in Plattsburgh, New York. Dkt. No. 65-2 at 138, 160. Medical records generated during that hospital visit do not indicate that plaintiff was currently suffering from any acute trauma or distress. *See, e.g., id.* at 160-64. In his complaint, however, plaintiff alleges that, as a result of the assault, he now suffers from migraines, painful urination, acute low-back pain, and loss of hearing, as well as psychological trauma including loss of sleep, post-traumatic stress disorder, and depression. Dkt. No. 1 at 5.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on October 3, 2014, with the filing of a complaint and accompanying application for leave to proceed in the case *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On December 15, 2014, following a review of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A, I accepted the complaint for filing and granted plaintiff's IFP motion. Dkt. No. 5.

Following the close of discovery, defendants filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint. Dkt. No. 64. Generally, in their motion defendants contend that

the record evidence does not support a reasonable factfinder's conclusion that any force was used on plaintiff during his admission to the mental health unit at Clinton, and, in any event, they are entitled to qualified immunity from suit. *See generally* [Dkt. No. 64-23]. Plaintiff has since responded to defendants' motion, [Dkt. No. 69], and defendants have submitted a reply brief in further support. [Dkt. No. 72]. Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this

inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.   <u>Plaintiff's Eighth Amendment Excessive Force Claim Asserted Against Defendants Tamer, Trudeau, Baker, Brown, and Hart</u>

Plaintiff's excessive force claim is grounded in the Eighth Amendment, which prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958); *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)) (citations omitted). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (quotation marks omitted); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the

other objective, focusing on the conduct's effect." *Wright v. Goord*, 554
F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*, 503 U.S. at 7-8; *Blyden v.
Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). To satisfy the subjective
requirement in an excessive force case, the plaintiff must demonstrate that
"the defendant had the necessary level of culpability, shown by actions
characterized by wantonness in light of the particular circumstances
surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quotation
marks omitted). This inquiry turns on "whether force was applied in a good
faith effort to maintain or restore discipline or maliciously and sadistically
for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6
(1992) (quotation marks omitted); *accord*, *Blyden*, 186 F.3d at 262. The
Supreme Court has emphasized that the nature of the force applied is the
"core judicial inquiry" in excessive force cases – not "whether a certain
quantum of injury was sustained." *Wilkins v. Gaddy*, 559 U.S. 34, 37
(2010) (per curiam). Accordingly, when considering the subjective element
of the governing Eighth Amendment test, a court must be mindful that the
absence of serious injury, though relevant, does not necessarily negate a
finding of wantonness. *Wilkins*, 559 U.S. at 37; *Hudson*, 503 U.S. at 9.

"The objective component [of the excessive force analysis] . . .
focuses on the harm done, in light of 'contemporary standards of

decency.'" *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8); *see also Blyden*, 186 F.3d at 263 (finding the objective component "context specific, turning upon 'contemporary standards of decency'"). In assessing this component, a court must ask whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *accord Hudson*, 503 U.S. at 8; *see also Wright*, 554 F.3d at 268. "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated. This is true whether or not significant injury is evident.'" *Wright*, 554 F.3d at 268-69 (quoting *Hudson*, 503 U.S. at 9) (alterations omitted). The extent of an inmate's injury is but one of the factors to be considered in determining whether a prison official's use of force was "unnecessary and wanton" because "injury and force . . . are imperfectly correlated[.]" *Wilkins*, 559 U.S. at 38. In addition, courts consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321; *Romano*, 998 F.2d *v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

When evaluating inmate claims of excessive force, courts must bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Romano*, 998 F.2d at 105 (quotation marks omitted); *see also Griffin*, 193 F.3d at 91. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation marks omitted).

In this case, the record evidence clearly reflects the existence of genuine disputes of material fact with respect to whether defendants Tamer, Trudeau, Baker, Brown, and Hart used excessive force against plaintiff on May 31, 2014. Plaintiff's deposition testimony and verified complaint suggest that those individuals assaulted him in the strip frisk area of the mental health unit during his admission to the observation cell in the mental health unit. Dkt. No. 1 at 3-4; Dkt. No. 64-2 at 52-53. Defendants' declarations submitted in support of their motion, in contrast, suggest that no force was used and that defendants Baker, Brown, and Hart were not even present for the search. Dkt. No. 64-7 at 2-3; Dkt. No. 64-10 at 2; Dkt. No. 64-13 at 2; Dkt. No. 64-14 at 2; Dkt. No. 64-15 at 2.

12

Resolving the discrepancy between the parties' competing evidence would require the court to undertake a credibility determination that is not appropriate on summary judgment. *See, e.g., Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Defendants contend that the absence of any objective medical evidence to support plaintiff's allegations is sufficient to permit the court to resolve the dispute regarding the events surrounding the strip frisk. Dkt. No. 64-23 at 17-19. Specifically, defendants maintain that because plaintiff's medical records do not reflect that he suffered any injury from the alleged assault, a reasonable factfinder could conclude that, at most, only *de minimis* force was used against him. *Id.* (citing district court cases). It is well settled, however, that *de minimis* injuries do not necessarily establish that only *de minimis* force was applied. *See Wright*, 554 F.3d at 269 ("[O]ur Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak . . . . [T]he absence of any significant injury to [the plaintiff] does not end the Eighth Amendment

inquiry, for our standards of decency are violated even in the absence of such injury if the defendant's use of force was malicious or sadistic[.]"). In this case, in the event a reasonable factfinder credits plaintiff's version of the strip frisk incident, the factfinder could also reasonably conclude that defendants did not use force in an effort to restore order but instead maliciously assaulted him in response to finding contraband on his person. Accordingly, I recommend defendants' motion be denied with respect to defendants Tamer, Trudeau, Baker, Brown, and Hart. *See Wright*, 554 F.3d at 269 (reversing summary dismissal of the plaintiff's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the . . . incident with [that officer] indicated only a slight injury") (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).[3]

---

[3]    In light of the disputed record evidence regarding whether defendants used excessive force against plaintiff maliciously and sadistically, I do not recommend dismissal of this claim on qualified immunity grounds. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citing *Reichle*, 132 S. Ct. at 2093). The

C.   Plaintiff's Conspiracy Claim Asserted Against Defendant Nycz

As it relates to defendant Nycz, plaintiff contends that she conspired with the other five defendants to facilitate their alleged assault on him. *See, e.g.,* Dkt. No. 1 at 2-3, 5 (describing defendant Nycz's decision to admit plaintiff to an observation cell as "a strategic play . . . so Sergent [sic] Tamer, C.O. Chris Trudeau, C.O. Kenri [sic] Baker, C.O. Kevin Hart, & C.O. Randy Brown could brutally and sadistically sexual [sic] and physically assault the plaintiff[.]"); Dkt. No. 69 at 13 (arguing that defendant Nycz knew "she was going to admit [him] into the observation cells so correction staff could assault [him]").  In their motion, defendants contend that this claim is subject to dismissal based on the merits. Dkt. No. 64-23 at 13-14.

---

Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). However, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendants in this case do not contend that plaintiff's right to be free from assault was not clearly established or that plaintiff's allegations regarding their specific conduct does not violate that clearly established right. Dkt. No.  64-23 at 20. Instead, defendants argue that their conduct, as alleged by plaintiff, was objectively reasonable. *Id.*  In the event plaintiff's allegations regarding the incident on May 31, 2014 are credited, however, no officer in defendants' position would have believed that their acts were lawful.

To sustain a conspiracy claim under section 1983, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact. *See, e.g., Hilson v. Maltese*, No. 09-CV-1373, 2012 WL 6965105, at *6 n.10 (N.D.N.Y. Dec. 14, 2012) (Baxter, M.J.), *report and recommendation adopted by* 2013 WL 375489 (N.D.N.Y. Jan. 30, 2013) (Mordue, J.) ("Plaintiff's conclusory assertion . . . is not sufficient to establish a material issue of fact[.]" (listing cases)); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).[4] By their "very nature," however, conspiracies are "secretive operations" and "may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72.

In this case, aside from plaintiff's mere allegation that defendant Nycz conspired with the other defendants, and admitted Telesford into an observation cell to further the goal of assaulting him, there is no evidence

---

[4]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

to support plaintiff's claim. Defendant Nycz contends that she admitted plaintiff to the observation cell based her observations during her interview of Telesford upon his arrival to the mental health unit. Dkt. No. 64-5 at 2-3. In particular, defendant Nycz noted that plaintiff "presented as aggressive and easily agitated[, h]is speech was pressured[, and h]e was also uncooperative and refused to permit [her] to take his vital signs." *Id.* at 2. Because she concluded that plaintiff "might be a danger to himself or others," she recommended plaintiff be admitted to an observation cell. *Id.* Defendant Nycz specifically denies lying about her assessment of plaintiff's condition and falsifying plaintiff's records, and she denies conspiring "with anyone." *Id.* at 3. For his part, plaintiff maintains that he remained "calm [and] collected" upon arriving in the mental health unit and denies presenting agitated. Dkt. No. 64-2 at 74.

Notwithstanding the existence of disputed evidence regarding plaintiff's temperament at the time defendant Nycz admitted him to the observation cell, I find that no reasonable factfinder could conclude that her decision to admit him was in furtherance of a conspiracy to assault plaintiff. Indeed, as was noted above, aside from plaintiff's allegation of a conspiracy, there is no other evidence of an agreement between defendant Nycz and the other defendants. In addition, even assuming

plaintiff was not agitated upon arriving at the mental health unit, and taking

as true plaintiff's allegation that he indicated to defendant Nycz he was

neither suicidal or homicidal, there is no record evidence that defendant

Nycz disregarded plaintiff's condition and representations for the purpose

of furthering a conspiracy. Because conclusory allegations are not

sufficient to support a conspiracy claim on summary judgment, I

recommend that plaintiff's claim asserted against defendant Nycz be

dismissed.

      D.    <u>Plaintiff's Claims for Damages and Requests for Declaratory and Injunctive Relief</u>

In his complaint, plaintiff requests the following relief:

> A.) Declaratory judgment that defendant's [sic] acts and practices described [in the complaint] violated plaintiff's rights under the United States Constitution.
> B.) An injunction relief
> C.) Jointly and severally against each defendants punitive damages in excess of 10,000,000
> D.) Jointly and severally against each defendants compensatory damages in excess of 10,000,000
> E.) Plaintiff cost of this suit.
> F.) Jury trial demand.
> G.) That the court should grant application for assignment of counsel and
> H.) For such other and further relief as this court deem appropriate and proper.

Dkt. No. 1 at 7-8. Defendants seek dismissal of plaintiff's claims for (1)

damages and retrospective injunctive relief based on Eleventh

Amendment immunity,[5] and (2) declaratory and injunctive relief based on mootness. Dkt. No. 64-23 at 21.

   1.   Plaintiff's Damage Claims Asserted Against Defendants in Their Official Capacities

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of N.Y. App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (*citing, inter alia, Cory v. White*, 457 U.S. 85, 89-91, (1982)). "To the extent that a state official is sued for damages in his

---

[5]   Plaintiff does not seek "retrospective injunctive relief." Dkt. No. 1 at 8.

official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff's damage claims in this action against the named-defendants in their official capacities are, in reality, claims against the State of New York, and therefore are subject to dismissal. *Daisernia*, 582 F. Supp. at 798-99. Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named defendants in their official capacities, those claims be dismissed with prejudice.

## 2. Plaintiff's Requests for Declaratory and Injunctive Relief

Plaintiff seeks declaratory and injunctive relief against defendants, all of whom are indisputably stationed at Clinton, for an incident that occurred at Clinton. Dkt. No. 1 at 8. Plaintiff, however, is presently incarcerated in the Upstate Correctional Facility. Dkt. No. 50. Because the Second Circuit has held that an inmate's request for prospective injunctive relief against corrections staff at a particular correctional institution becomes moot when he is discharged or transferred to a different

correctional institution, I recommend plaintiff's claims seeking declaratory and injunctive relief be dismissed. *See, e.g., Day v. Chaplin*, 354 F. App'x 472, 473 (2d Cir. 2009) (citing *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976)); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)); *see also Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir 1989) ("Since [the plaintiff] is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot.").

IV.  SUMMARY AND RECOMMENDATION

There is evidence in the record from which a reasonable factfinder could conclude that defendants Tamer, Trudeau, Baker, Brown, and Hart used excessive force against plaintiff on May 31, 2014. Plaintiff's conspiracy claim against defendant Nycz, however, is supported by conclusory allegations and is therefore subject to dismissal. In addition, plaintiff's claim for damages against the remaining defendants in their official capacities, and his claims for declaratory and injunctive relief, are subject to dismissal. Accordingly, it is respectfully

RECOMMENDED that defendants' motion for summary judgment, Dkt. No. 64, be GRANTED in part and DENIED in part as follows:

1.     Plaintiff's conspiracy claim asserted against defendant Nycz should be DISMISSED and she should be DISMISSED from the action;

2.     Plaintiff's damage claims asserted against all defendants in their official capacities should be DISMISSED;

3.     Plaintiff's claims seeking declaratory and injunctive relief should be DISMISSED; and

4.     Plaintiff's Eighth Amendment excessive force claim seeking compensatory and punitive damages and asserted against defendants Tamer, Trudeau, Baker, Brown, and Hart in their individual capacities should survive defendants' motion and proceed to trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:   August 31, 2016
         Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2012 WL 6965105 (N.D.N.Y.)
**(Cite as: 2012 WL 6965105 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Lerome HILSON, Plaintiff,
v.
M. MALTESE, et al., Defendants.

No. 9:09–CV–1373 (NAM/ATB).
Dec. 14, 2012.

Lerome Hilson, pro se.

Megan M. Brown, Asst. Attorney General for Defendant.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter was referred for Report and Recommendation on March 22, 2012 by U.S. District Judge Norman A. Mordue, pursuant to 28 U.S .C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In his amended civil rights complaint, plaintiff alleges that Corrections Officers Maltese, Ryder, and Dinkins physically and sexually assaulted him, and/or failed to intervene to protect him, during a "strip frisk" at Five Points Correctional Facility ("Five Points") on June 12, 2008. (Amended Complaint ("AC"), Dkt. No. 37). Plaintiff seeks substantial monetary damages and injunctive relief. (*Id.*).[FN1]

> FN1. The amended complaint also included claims against several John or Jane Doe defendants; but plaintiff subsequently moved to withdraw his claims against the unidentified defendants, which motion Judge Mordue granted. (Dkt.Nos.47, 48).

Presently before the court is defendants' motion

for summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt.Nos.51, 52). Plaintiff opposes defendants' motion. (Dkt. No. 54).[FN2] Defendants argue that (1) defendants did not violate plaintiff's Eight Amendment rights because their use of force against him was de minimis and was applied in a good faith effort to maintain or restore discipline, not maliciously and sadistically; (2) plaintiff's misconduct was the proximate cause of the minor injuries that he suffered; and (3) the defendants are entitled to qualified immunity. (Def.s' Memo. of Law at 1, Dkt. No. 51–10). Based on the record, including a videotape of the entire incident, this court concludes that no rational fact finder could conclude that plaintiff has established an Eighth Amendment claim for excessive force or sexual assault. Accordingly, this court recommends that defendants' motion for summary judgment be granted and that plaintiff's amended complaint be dismissed in its entirety.

> FN2. Plaintiff also filed a letter which the Clerk construed as a motion for a temporary restraining order/preliminary injunction. (Dkt. No. 57). After the defendants filed opposition to that motion (Dkt. No. 58), plaintiff advised the court that he did not intend to move for injunctive relief and withdrew the motion (Dkt. No. 59).

**DISCUSSION**

**I. *FACTS***

Plaintiff alleges that, on June 12, 2008, he and other inmate mess hall workers were going, as ordered, to pick up food service carts when he encountered defendant Maltese. Plaintiff alleges that C.O. Maltese ordered plaintiff to submit to a pat frisk, using degrading language. (AC, Dkt. No. 37 at 6).[FN3] Defendant Maltese and a correction sergeant (identified in the amended complaint only as "John Doe") then escorted plaintiff to a separate room to conduct a strip frisk. (*Id.*). Plaintiff alleges that C.O. Maltese continued to act unprofessionally,

Not Reported in F.Supp.2d, 2012 WL 6965105 (N.D.N.Y.)
**(Cite as: 2012 WL 6965105 (N.D.N.Y.))**

and that a female correction officer kept coming into the room, making plaintiff "very uncomfortable." However, Sgt. Doe refused plaintiff's request that another correction officer take over the strip frisk. (AC at 6–7).

> FN3. Because plaintiff organized his amended complaint without consecutive paragraph or page numbers, the court will reference the page numbers assigned by the court's Case Management/Electronic Filing system.

Plaintiff alleges that, although he complied with the officer's directions in connection with the ensuing strip frisk, C.O. Maltese and Sgt. Doe pushed plaintiff against the wall and began to assault him by, *inter alia,* hitting him in the face. (AC at 7). Plaintiff was forced to the floor and placed in handcuffs and leg restraints. C.O. Maltese then allegedly sat on plaintiff's back "and used his hands to spread open my buttcheeks attempting to stick his finger in my anus then fondling my scrotum by holding it and squeezing it while smacking my ass; resulting in sexual assault...." (*Id.*). Plaintiff alleges that C.O. Ryder and C .O. Dinkins were present during the stip frisk and used excessive force against the plaintiff and/or failed to intervene to protect him from the physical and sexual assault. (AC at 7, 9).

**\*2** The amended complaint alleges that plaintiff suffered nightmares and fear as a result of this incident, causing him to seek psychiatric treatment. (AC at 8). During his deposition, plaintiff described his physical injuries to include swelling on his lips and bruising on his face, back, side, arm, and wrists. (Plf.'s Dep. at 32, 36, 45, Dkt. No. 51–5).

The declarations and reports of C.O. Maltese and other employees of the Department of Corrections and Community Supervision ("DOCCS") describe the incident on June 12, 2008 quite differently. C.O. Maltese conducted a strip frisk of plaintiff, with the approval of Sgt.

Elsenheimer, after defendant Maltese observed plaintiff "walking in an unusual manner" and discovered, during a pat frisk, "an unidentifiable bulge in [plaintiff's] groin area." (Unusual Incident Rept., Dkt. No. 52–1 at 11–13; Use of Force Report, Dkt. No. 52–1 at 14; 6/12/2008 Maltese Mem., Dkt. No. 52–1 at 30–32; Maltese Decl., Dkt. No. 51–7).

During the strip frisk, the defendants used force to subdue and restrain plaintiff when he reportedly refused to follow instructions to lift his penis and testicles, became irate, and raised closed fists towards defendant Maltese. (*Id.;* 6/12/08 Elsenheimer Mem., Dkt. No. 52–1 at 36–37; Dinkins Decl., Dkt. No. 51–8; Ryder Decl., Dkt. No. 51–9). As discussed below, the videotape, while it does not clearly show every detail of this frenetic incident, strongly corroborates the defendants' version of plaintiff's conduct before force was used by the correction officers. After plaintiff was restrained on the floor, C.O. Maltese then completed the strip frisk, using gloved hands to separate plaintiff's buttock cheeks. (6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.). The DOCCS reports and medical records, including color photographs of plaintiff taken shortly after the incident, document that plaintiff suffered only a 5 cm. raised area on his right eyebrow and a 5 cm. swollen and red open area on his right cheek. (Dkt. No. 52–1 at 15–23).

The strip frisk resulted in the discovery and seizure of 21 concealed contraband cigarettes, which reportedly fell to the floor when plaintiff removed his pants, and a rolled-up brown paper towel found between plaintiff's buttocks. (Maltese Decl. ¶¶ 17–18, 28; 6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.; photograph logs and photographs of contraband, Dkt. No. 52–1 at 24–26). As a result of the incident, plaintiff was issued a misbehavior report charging him with creating a disturbance, refusing to obey a direct order, harassment, smuggling contraband, violating search and frisk policies, and destruction of state

Not Reported in F.Supp.2d, 2012 WL 6965105 (N.D.N.Y.)
**(Cite as: 2012 WL 6965105 (N.D.N.Y.))**

property. (Dkt. No. 54–2 at 125–27).

A transcript of the disciplinary hearing indicates that plaintiff pled guilty to all charges, acknowledging that he "f—ed up" and that the situation "escalated and got out of proportion." (Dkt. No. 54–2 at 131–35). During his deposition, plaintiff denied that he had any contraband on June 12, 2008, denied that he pled guilty to the charges at the hearing, and claimed that what really happened at the hearing was being covered up. (Plf.'s Dep. at 65–70). Plaintiff acknowledged that he did not appeal the guilty disposition on the disciplinary charges, despite his professed innocence. (*Id.;* Dkt. No. 54–2 at 128–29).

## II. *APPLICABLE LAW*

### A. Summary Judgment

**\*3** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc .,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272.

### B. Eighth Amendment

### 1. Excessive Force

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian,* 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *Sims v.. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be " 'inconsistent with the contemporary standards of decency.' " *Whitley v. Albers,* 475 U.S. 312, 327 (1986) (citation omitted); *Hudson,* 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se [,]" regardless of the seriousness of the injuries. *Blyden,* 186 F.3d at 263 (citing *Hudson,* 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Sims,*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6965105 (N.D.N.Y.)
**(Cite as: 2012 WL 6965105 (N.D.N.Y.))**

230 F.3d at 22 (citation omitted).

**\*4** The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id. at 21* (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* (quoting *Hudson, 503 U.S. at 7).* In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003).

**2. Sexual Abuse**

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie v. Schnieder,* 105 F.3d 857, 860, 861 (2d Cir.1997). The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may be potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions...." *Id.* at 861–62.

**3. Failure to Intervene**

A correction officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate. *See, e.g., Tafari v. McCarthy,* 714 F.Supp.2d 317, 342 (N.D.N.Y. May 24, 2010); *Cicio v. Graham,* No. 9:08–CV–534 (NAM/DEP), 2010 WL 980272, at \*13 (N.D.N.Y. March 15, 2010). A law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *Id.*[FN4] In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Id.; Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citation omitted).

> FN4. *See also Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be."); *Anderson v. Branen,* 17 F .3d 552, 557 (2d Cir.1994) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence").

**III. *ANALYSIS***

There is no dispute that the defendants applied force to plaintiff during the course of a strip frisk on June 12, 2008. Defendant Maltese contends that, when he ordered plaintiff to lift his penis and testicles as part of the strip frisk procedure, plaintiff grabbed his penis and shook it at the officer, saying "F—you, I'm not doing another thing for you!" (Maltese Decl. ¶ 20; 6/12/2008 Maltese Mem. at 2). C.O. Maltese alleges that plaintiff was yelling and waving his arms and that he raised his right arm and a clenched fist level with the officer's face. (Maltese Decl. ¶¶ 21–22; 6/12/2008 Maltese Mem. at 2–3). Defendant Maltese states that he began to fear for his safety and determined that he needed to gain control of the plaintiff before the situation escalated further, so he pushed defendant backward and grabbed plaintiff's head and neck to force him

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

to the floor. (Maltese Decl. ¶ 23–24; 6/12/2008 Maltese Mem. at 3). Other officers then began to assist C.O. Maltese in subduing plaintiff and placing him in restraints, after which defendant Maltese completed the strip frisk, by spreading plaintiff's buttocks while he was lying face down on the floor. (Maltese Decl. ¶ 25–28; 6/12/2008 Maltese Mem. at 3).

   **\*5** During his deposition, plaintiff conceded that "he never really wanted to comply with the rest of [the strip search]," and that C.O. Maltese directly ordered him to comply "numerous" times. (Plf.'s Dep. at 30–31). Plaintiff claimed that he did not lift his hands up to cause any physical harm to the correction officer. (Plf.'s Dep. at 30). He contends that once the officers had him in a body hold, he did not resist. (Plf.'s Dep. at 39). Plaintiff further alleged that defendant Maltese punched him repeatedly, seven to eight times, in the face and that plaintiff was also kicked. (Plf.'s Dep. at 35, 45). During his October 2011 deposition, plaintiff acknowledged that the video of the June 12, 2008 incident, which he last viewed in 2009, was an "accurate depiction of what happened." (Plf.'s Dep. at 41, 72).[FN5]

> [FN5]. In his July 24, 2008 Notice of Intention to File Claim, plaintiff claims that he "was assaulted by the officers off camera." (Dkt. No. 54–2 at 27). Plaintiff has consistently alleged that the officers who assaulted him were C.O. Maltese and "Sgt. Doe" (who was presumably Sgt. Elsenheimer). In his deposition, plaintiff acknowledges that he was escorted from the strip frisk room after the incident by officers other than Maltese and the sergeant. (Plf.'s Dep. at 42). The video tape, which has a running time signature by hour, minute, and second, shows the entire incident, from plaintiff's escort into the strip frisk room by C.O. Maltese to his escort out of the same room by other officers, with no apparent gaps during

which plaintiff might have been assaulted "off camera."

   This court has carefully reviewed the surveillance video of the June 12, 2008 incident at Five Points, which shows the approximately 30 minutes while plaintiff was in the strip frisk room with C.O. Maltese and others, without any audio.[FN6] The plaintiff began to remove his clothes, as directed by C.O. Maltese, at approximately 1:25:30.[FN7] Just prior to taking off his boxer shorts, starting at 1:28:24, the plaintiff waved his arms and turned his head to C.O. Maltese. At about 1:29:15, the plaintiff used his right hand to shake his penis towards the officer, in apparent irritation. The plaintiff, facing C.O. Maltese, again started to wave his arms at the officer, while saying something forcefully to him. (Video, 1:29:22). With C.O. Maltese holding his left hand, palm down, towards the plaintiff, the inmate appeared to shout and continued to wave raised arms and hands, at times with fists clenched. (Video, 1:29:38). Over the next 30 seconds or so, while C.O. Maltese continued to use his hand, palm down, in an apparent effort to calm the plaintiff, the inmate made several more forceful comments to C.O. Maltese, waved his arms several more times in an agitated fashion, and leaned in toward the officer once. (Video, 1:29:53). At approximately 1:30:08, just after plaintiff appeared to say something further to C.O. Maltese while shaking his head from side to side, the officer pushed plaintiff against the wall, grabbed him around the neck, and pulled him to the floor.

> [FN6]. The video shows the output of four cameras at different points in and around the strip frisk room at Five Points. Most of the relevant portions of the video show plaintiff on camera no. 4 in the strip frisk room, although he is briefly seen on other cameras as he was escorted into and out of the strip frisk room. Defense counsel provided a CD with several video files, some of which consist of only portions of the incident and some of which did not

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

play, at least on the programs available to me. However, the file "VIDEO—TS.IFO" shows the entire incident.

FN7. As noted, the video image has a running time stamp, which apparently corresponds to the time in the afternoon when the incident took place.

At 1:30:11, three other male correction officers rush into the room and positioned themselves at various positions around plaintiff's body on the floor. From the movement of the four officers over the next minute or so, it is apparent that the plaintiff was still struggling. At 1:30:20, the female officer handed C.O. Maltese something, presumably restraints. At approximately 1:30:44 and 1:30:56, while the plaintiff still appeared to be resisting, a correction officer other than C.O. Maltese punched plaintiff with his right fist a total of five times, but without lifting his arm to a great extent or appearing to use substantial force.FN8 There is no indication on the video that anyone kicked the plaintiff and, given the small size of the strip frisk room and the positions of the four officers who were kneeling or stooping over the plaintiff, they would not have been in a position to strike plaintiff with their feet with any force. By 1:31:26, two of the officers stood, and the more relaxed posture of the other two officers indicates that the plaintiff had stopped struggling and had presumably been placed in restraints. The officers then moved plaintiff's position on the floor. (Video, 1:32:00).

FN8. In his declaration, defendant Ryder admits striking plaintiff three times in his right elbow with his closed fist after plaintiff refused orders to put his hands behind his back so that restraints could be applied. (Ryder Decl. ¶¶ 8–10).

*6 Over the next few minutes, while plaintiff remained face down on the floor, several officers came in and out of the room, some putting on latex gloves. While it is not entirely clear at what point C.O. Maltese completed the strip frisk, that appeared to happen at some point between 1:35:30 and 1:38:10. The correction officers then put some clothes on or over plaintiff while he was still on the floor (Video, 1:39:00) and then help him back onto his feet (Video, 1:39:58). Shortly thereafter, the officers involved in the strip frisk appeared to be relieved of duty by other officers. For approximately ten minutes, these other officers waited in the strip frisk room with plaintiff-still in restraints and standing against the wall-and then escorted the plaintiff towards the infirmary.

Based on the record presented in connection with the summary judgment motion, this court concludes that no reasonable fact finder could conclude that the defendants used force against the plaintiff maliciously and sadistically to cause harm, as required to satisfy the subjective element of the Eighth Amendment standards for excessive force. As plaintiff acknowledged in his deposition, he was serving a sentence for second degree murder, following a prior conviction for robbery and assault, and he outweighed the officer who was conducting the strip search by 70 to 80 pounds. (Plf.'s Dep. at 6–7, 34). Notwithstanding the lack of an audio track, the video of the strip search clearly corroborates the statements of C.O. Maltese and others that plaintiff was agitated and was making aggressive gestures with his arms and hands.FN9 The deposition testimony of plaintiff, his guilty plea to the various disciplinary charges against him, and the video tape all overwhelmingly corroborate the officers' statements that plaintiff refused to comply with the orders of C.O. Maltese to complete the strip frisk procedure.FN10 Under those circumstances, no reasonable juror would question that C.O. Maltese, in forcing plaintiff to the floor, applying restraints, and completing the strip frisk once plaintiff was restrained, acted in a good faith effort to maintain and restore discipline with respect to a dangerous inmate who was acting aggressively and refusing direct orders. *See, e.g., Perkins v. Brown,* 285 F.Supp.2d 279, 284–85 (E.D.N.Y.2003) (defendants' use of force to search plaintiff only after he had refused to submit to a

search and directed profanity at defendants was clearly not "repugnant to the conscience of mankind," but was a good faith effort to restore discipline and to gain control over a recalcitrant and dangerous inmate); *Johnson v. Woods,* No. 07–CV–1018 (DNH/DRH), 2010 WL 2039164, at *15–16 (N.D.N.Y. Mar. 2, 2010) (given that the officers' declarations and the facility video tapes showed that plaintiff was agitated, combative, and uncooperative, his allegations to the contrary raised no issues of material fact that the use of force to extract plaintiff from his cell was the only option to uphold discipline and was reasonably calculated to ensure the safety of the officers); *Cunningham v. Rodriguez,* 01 Civ. 1123, 2002 WL 31654960, at *5–6 (S.D.N.Y. Nov. 22, 2002) (granting summary judgment and dismissing the excessive force claim of a plaintiff who, after disobeying a direct order of the court and using profanity, refused to comply with a court officer's order to step back and place his hands behind his back; because of his resistance, the officers' use of force to subdue him and to escort him out of the courtroom was not "repugnant to the conscience of mankind").

> FN9. The court may rely on the video of the relevant events in concluding that no reasonable fact finder could credit the plaintiff's inconsistent claims about the incident. *See, e.g., Kalfus v. New York and Presbyterian Hosp.,* 476 F. App'x 877, 880–81 (2d Cir.2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse,* 00–CV–6533, 2009 WL 1401642, at *9 (W.D.N.Y. May 18, 2009) (this court may rely on the video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim) (citations omitted).

> FN10. Plaintiff's conclusory assertion that the transcript and other records of his disciplinary hearing were completely fabricated is not sufficient to establish a material issue of fact with respect to his admissions of guilt to charges, including violating stip frisk procedures, particularly in light of his failure to appeal. *See, e.g., Proctor v. Kelly,* 9:05–CV–692 (GTS/GJD), 2008 WL 5243925, at *5 (N.D.N.Y. Dec. 16, 2008) (plaintiff's conclusory and unsupported allegations that a defendant tampered with the tape of a disciplinary hearing is not sufficient to overcome summary judgment dismissing due process claims); *Gill v. Jones,* 95 Civ. 9031, 2001 WL 1346012, at *8–9 (S.D.N.Y. Nov. 1, 2001) (plaintiff's conclusory claim that his appeals of disciplinary hearings must have been tampered with because they were never received is insufficient to avoid summary judgment on an interference-with-mail claim); *Lewis v. Johnson,* 08–CV–0482 (TJM/ATB), 2010 WL 3785771, at *20 (N.D.N.Y. Aug. 5, 2010) (plaintiff's conclusory allegation that multiple medical professionals in two different prisons fabricated plaintiff's medical records to suppress evidence of his alleged injuries is highly suspect and would, in the court's view, be insufficient to sway any rational fact finder) (ReportRecommendation), *adopted,* 2010 WL 3762016 (N.D.N.Y. Sept. 20, 2010). As noted above, plaintiff also denied, during his deposition that he possessed any contraband cigarettes or that he pled guilty to smuggling such contraband. As corroboration of his denial, plaintiff points to the fact that the video tape of the strip frisk does not show the contraband cigarettes falling out of plaintiff's pants. (Plf.'s Dep. at 44). While it is true the video does not show the contraband cigarettes, C.O. Maltese

searched plaintiff's pants partly while just out of camera range. (Video, 1:26:45). And, as noted above, there is other documentary corroboration of the seized cigarettes, including photographs of the contraband. (Maltese Decl. ¶¶ 17–18, 28; 6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.; photograph logs and photographs of contraband, Dkt. No. 52–1 at 24–26). In any event, it is not material to the evaluation of plaintiff's excessive force claims whether or not he was actually found in possession of contraband. His combative refusal to cooperate with a legitimate strip frisk procedure warranted the defendants' forceful response, whether or not the officers eventually found any contraband.

**\*7** Given the video evidence regarding the extent of the force applied to the plaintiff and the medical evidence of the relatively minor nature of his injuries, no reasonable fact finder could conclude that the force applied to plaintiff was more than de minimis, and thus was insufficient to satisfy the objective element of the Eighth Amendment standards for cruel and unusual punishment. In any event, there is no material issue of fact that the force applied was not greater than reasonably necessary to restore discipline and order under the circumstances encountered by the defendants. *See, e.g., Sprau v. Coughlin,* 997 F.Supp. 390, 394–95 (W.D.N.Y.1998) (plaintiff inmate alleged that the officer grabbed him behind the neck and hit him several times across the neck and face and in the eye, but the medical report noted only a small bump under plaintiff's eye; the court found that the amount of force used was de minimis and did not reach constitutional dimensions); *Bove v. New York City,* 98 Civ. 8800, 1999 WL 595620, at \*6 (S.D.N.Y. Aug. 6, 1999) (the plaintiff's alleged injuries that are supported by the objective hospital records-a single bruise to head-lead the court to conclude that the force used by the officers on the night in question was at

worst, de minimis); *Johnson v. Woods,* 2010 WL 2039164, at \*12, 15 (a broken pinky finger on plaintiff inmate's left hand, a slight bump on his head, and a mild head and rib pain are not injuries of sufficient severity, nor worthy of Eighth Amendment protection).

Defendant Ryder's controlled punches to plaintiff's arm while the inmate was struggling on the floor, resisting the officers' attempts to apply mechanical restraints, is clearly a de minimis use of force outside of the protection of the Eighth Amendment. *See, e.g., Allaway v. McGinnis,* 473 F.Supp.2d 378, 382–83 (W.D.N.Y.2007) (the four punches delivered to plaintiff (which the officer describes in a sworn declaration as blows administered for the sole purpose of getting plaintiff to comply with the officers) were, as shown on the video, delivered in a deliberate, methodical manner from a relatively short distance, while plaintiff was still struggling and resisting the officers' attempts to place mechanical restraints on him; no rational fact finder could conclude that these punches met either the objective or subjective components of an Eighth Amendment violation). Even if, as plaintiff claims, some of these blows landed on his face, there would be no material issue of fact supporting his claim of excessive force. *See, e.g., Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070, at \*13, n. 46 (S.D.N.Y. May 7, 2001) (plaintiffs allegations that officer hit him two or three times in the face, causing his face to turn red, but resulting in no other injuries are insufficient to state an Eighth Amendment claim) (collecting cases); *Cunningham v. Rodriguez,* 2002 WL 31654960, at \*5 (blows to back and face held to be de minimis).

**\*8** With respect to plaintiff's claims of sexual abuse [FN11] during the strip frisk, such an isolated incident of alleged sexual touching does not involve a harm of federal constitutional proportions. *Boddie v. Schnieder,* 105 F.3d at 861.[FN12] Numerous courts in this Circuit have held that allegations of isolated sexual abuse during frisk searches do not

implicate the Eighth Amendment. *See Morrison v. Cortright,* 397 F.Supp.2d 424 (W.D.N.Y.2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Montero v. Crusie,* 153 F.Supp.2d 368, 373, 375 (S.D.N.Y.2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); *Williams v. Keane,* No. 95 Civ. 379, 1997 WL 527677, at *1, 11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

> FN11. Plaintiff's allegations that C.O. Maltese directed racially or otherwise degrading and abusive or profane language toward him during the incident, does not support an Eighth Amendment claim. Verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under ... § 1983 ." *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) (collecting cases). *See also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (the claim that a prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed).

> FN12. Plaintiff cites *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 236–38 (S.D.N.Y.2005) for the proposition that "contemporary standards of decency" relating to alleged sexual assault during a prison pat frisk have become more

stringent since the Second Circuit's *Boddie* case. However, the court agrees with other district judges in this circuit who have concluded that *Rodriguez* incorrectly concluded that *Boddie* is not controlling precedent. *See, e.g., Samuels v. Strange,* 3:08–CV–1872, 2012 WL 4754683, at *4 (D.Conn. Oct. 4, 2012) (the holding of *Rodriguez* is inconsistent with Second Circuit precedent, as well as the vast majority of relevant circuit and district court cases); *accord, Harry v. Suarez,* 10 Civ. 6756, 2012 WL 2589080 (S.D.N.Y. July 3, 2012).

In sum, based on the conclusive video and medical evidence in the record, plaintiff's inconsistent and/or conclusory allegations regarding the circumstances of the incident during the strip frisk on June 12, 2008; the nature and extent of the force used against him; and the extent of his injuries do not create material issues of fact sufficient to defeat defendants' summary judgment motion. *See Scott v. Harris,* 550 U.S. 372, 379–81 (2007) (when opposing parties tell two different stories, one of which is blatantly contradicted by the record evidence (including surveillance video), so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment); *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account"); *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary

judgment once the moving party has set forth a documentary case"). Accordingly this court recommends that plaintiff's claims of excessive force and sexual abuse under the Eighth Amendment should be dismissed in their entirety. Because of this court's conclusion that no Eighth Amendment violation occurred, this court need not address plaintiff's claim that certain defendants failed to intervene to protect him from such purported violations, or the defendants' claims of qualified immunity.FN13

> FN13. In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (holding that, "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory" in all cases). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201.

**\*9 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED** and the remaining claims in the Amended Complaint be **DISMISSED IN THEIR ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2012.
Hilson v. Maltese
Not Reported in F.Supp.2d, 2012 WL 6965105 (N.D.N.Y.)

END OF DOCUMENT

Not Reported in F.Supp.2d, 2013 WL 375489 (N.D.N.Y.)
**(Cite as: 2013 WL 375489 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Lerome HILSON, Plaintiff,
v.
M. MALTESE; Elsenheimer; C. Dinkins; and
Ryder, Defendants.

No. 9:09–CV–1373 (NAM/ATB).
Jan. 30, 2013.

Lerome Hilson, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of
the State of New York, Megan M. Brown, Esq.,
Assistant New York State Attorney, The Capitol,
Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

Hon. NORMAN A. MORDUE, District Judge.

**\*1** Upon referral pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.3(c), United States
Magistrate Judge Andrew T. Baxter issued an
excellent and thorough Report and
Recommendation (Dkt. No. 62) recommending that
this Court grant defendants' motion (Dkt. No. 51)
for summary judgment dismissing the amended
complaint (Dkt. No. 37). Plaintiff objects (Dkt. No.
64). Under 28 U.S.C. § 636(b)(1)(C), this Court is
required to review *de novo* those parts of a report
and recommendation to which a party specifically
objects.

Given the extensive nature of plaintiff's
objections, the Court conducts a *de novo* review of
the entire Report and Recommendation. Upon *de
novo* review, the Court accepts and adopts the
Report and Recommendation in full.

It is therefore

ORDERED that the Report and
Recommendation (Dkt. No. 62) is accepted and
adopted; and it is further

ORDERED that defendants' motion (Dkt. No.
51) for summary judgment is granted; and it is
further

ORDERED that the amended complaint (Dkt.
No. 37) is dismissed on the merits and the case is
closed; and it is further

ORDERED that the Clerk of the Court is
directed to serve copies of this
Memorandum–Decision and Order in accordance
with the Local Rules of the Northern District of
New York.

IT IS SO ORDERED.

N.D.N.Y.,2013.
Hilson v. Maltese
Not Reported in F.Supp.2d, 2013 WL 375489
(N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.